# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTY M. CADDELL,                    )
                                    )
                **Plaintiff,**        )
                                    )        **CIVIL ACTION**
**v.**                                                 )
                                    )        **No. 04-2403-KHV**
**CITIMORTGAGE, INC.,**                  )
                                    )
                **Defendant.**        )
_____)

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

        Christy M. Caddell filed suit against her residential mortgage lender CitiMortgage, Inc.  Plaintiff asserts claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and state law claims for accord and satisfaction, breach of contract, breach of fiduciary duty, conversion, negligence and fraud. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #82) and Plaintiff's Motion For Summary Judgment Pursuant To Fed. R. Civ. P. 56 And Local Rule 56.1 And Memorandum In Support Thereof (Doc. #84), both filed October 12, 2005.  For reasons stated below, the Court sustains defendant's motion in part and directs plaintiff to show cause why the Court should not dismiss plaintiff's remaining state law claims for lack of subject matter jurisdiction.

## Summary Judgment Standards

        Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing

law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on its pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment."  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

## Factual Background

For purposes of defendant's motion for summary judgment, the following facts are uncontroverted,

deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

On or about November 24, 2001, plaintiff signed a note with Firstar Bank ("Firstar") to finance her home in Leawood, Kansas.  Firstar later assigned its rights to CitiMortgage.  On or about April 23, 2004, plaintiff and CitiMortgage refinanced the note.  Plaintiff signed a mortgage and a note for the refinanced loan.[1]  In the note, plaintiff promised to pay $167,198.00 in principal at a fixed interest rate of 5.5 per cent on the unpaid principal on the first day of each month, with a monthly payment of $949.33 toward principal and interest, plus escrow.  The note also provided that plaintiff could make prepayments.

After plaintiff refinanced the note, she paid CitiMortgage as follows:

| DATE | AMOUNT | Plaintiff's Request How To Allocate Payment |
|---|---|---|
| 5-27-04 | $1,440.33 | principal, interest + escrow |
| 5-27-04 | $948.52 | principal only |
| 6-19-04 | $1,440.33 | principal, interest + escrow |
| 6-19-04 | $3,047.46 | principal only |
| 7-16-04 | $1,474.33 | principal, interest + escrow |
| 7-16-04 | $6,013.46 | principal only |
| 8-7-04 | $800.00 | principal only |
| 8-10-04 | $600.00<br>$1,200.00 | principal only<br>principal only |
| 8-16-04 | $1,474.33 | principal, interest + escrow |
| 8-16-04 | $1,487.79<br>$1,500.00 | principal only<br>principal only |

---

[1]        Defendant did not sign the note, and the note does not call for or contemplate execution by the lender.

3

On August 24, 2004, plaintiff filed this suit against CitiMortgage.[2]  Plaintiff asserts claims under the

federal TILA and state law claims for breach of contract, breach of fiduciary duty, conversion, negligence

and fraud.  Plaintiff alleges that CitiMortgage misapplied her prepayments, in violation of the terms of the

mortgage and the note, thus skewing the effective interest rate and rendering inaccurate the interest rate

disclosures at and prior to closing.[3]  Plaintiff claims that by overcharging her interest, defendant breached

the terms of the note and mortgage, breached its fiduciary duty to plaintiff and unlawfully converted her

money.[4]  Plaintiff also claims that defendant negligently and fraudulently represented that when she

refinanced the original note, the amount due was $167,198.00; in fact, she claims, the amount had been

inflated because of the manner in which defendant applied her payments.  See Pretrial Order (Doc. #88)

---

[2]        Plaintiff lists herself and her common law husband as counsel.  Plaintiff is an attorney who primarily represents financial institutions on matters involving loans that are in default.

[3]        In particular, plaintiff alleges that (1) if she sent a prepayment in the same envelope as her next month's payment, defendant logged the next month's payment into her loan history before it logged the prepayment and charged her the same interest on the next month's payment, as if she had not made a prepayment; (2) if she made a prepayment in an amount larger than her regular monthly payment, defendant took the regular monthly payment out of the prepayment and then reduced the principal by the excess amount despite plaintiff's written instructions that the entire amount was to be applied to principal only; and (3) when she made multiple prepayments in a month, in amounts that were larger than her regular monthly payment, defendant would apply each prepayment first to a future regular monthly payment (sometimes two or three months in advance) despite plaintiff's written instructions that the entire amount was to be applied to principal only.

Plaintiff asserts that based on the original loan balance of $167,198.00, assuming that she makes no more extra payments, she will end up paying approximately $7,578.57 more than what she believes she owes on the note.  Further, plaintiff estimates that her payments should end in 2019.  Based on CitiMortgage's estimate, plaintiff's payments will not end until 2021.

[4]        Plaintiff conceded that if she called during the month that defendant misapplied a payment, defendant would correct the problem.  Defendant, however, refused to go back and correct the problem for prior months.

at 4, 8, 12-13; Plaintiff's Memorandum (Doc. #99) at 29-34.[5]

After plaintiff filed suit, she made payments to CitiMortgage as follows:

| DATE | AMOUNT | Plaintiff's Request How To Allocate Payment |
|---|---|---|
| 8-30-04 | $1,474.33 | principal, interest + escrow |
| 9-4-04 | $800.00 | principal only |
| 9-8-04 | $600.00 | principal only |
| 9-11-04 | $1,500.00 | principal only |
| 9-14-04 | $1,300.00 | principal only |
| 9-15-04 | $800.00 | principal only |
| 9-16-04 | $2,000.00<br>$12,000.00 | principal only<br>principal only |

On September 18, 2004, plaintiff sent a check for $200 to CitiMortgage Customer Service Department in Englewood, New Jersey.  Along with the check, plaintiff sent a letter which stated that the check was in "full and final settlement and accord and satisfaction of [her] mortgage loan."  Plaintiff noted on the check itself her account number and "PAID IN FULL ACCORD AND SATISFACTION."  At the time, plaintiff believed that she owed approximately $118,000 on her mortgage.

Plaintiff made three payments of $1,396.05 each on October 6, October 25 and December 30, 2004.  These payments consisted of plaintiff's regular monthly payments of principal, interest and escrow.

_____

[5]    In her deposition, plaintiff also claimed that the note negligently and fraudulently stated that plaintiff had a right to make principal prepayments and that such payments would be applied in the following order of priority: interest due under the note, principal due under the note, any other amounts due such as escrow items.  In her opposition brief, plaintiff has abandoned such a claim.  See Plaintiff's Memorandum (Doc. #99) at 29-34.  In addition, the pretrial order did not include such a claim.  See Pretrial Order (Doc. #88) at 4, 8, 12-13.

In January of 2005, plaintiff filed a motion to amend her complaint to add a claim for accord and satisfaction. In March of 2005, the Court sustained plaintiff's motion and plaintiff filed her amended complaint.

Plaintiff seeks summary judgment on her claim of accord and satisfaction. Defendant seeks summary judgment on all of plaintiff's claims. Specifically, defendant argues that it is entitled to summary judgment because (1) on plaintiff's accord and satisfaction claim, plaintiff's tender of a $200 check for her mortgage was not in good faith and plaintiff cannot show new consideration for the accord and satisfaction or that the entire amount of her mortgage was subject to a bona fide dispute; (2) on plaintiff's breach of contract claim, such a claim is not ripe, defendant complied with the terms of the parties' contract and even if defendant breached the contract, plaintiff did not incur damages; (3) on plaintiff's breach of fiduciary duty claim, the contract did not create a fiduciary duty and none is implied by law; (4) on plaintiff's conversion claim, defendant was authorized to apply plaintiff's prepayments to the note and that even if defendant misapplied such payments, plaintiff cannot maintain a conversion action independent of the parties' contract; (5) on plaintiff's TILA claim, a lender cannot violate the TILA disclosure requirements by events subsequent to loan closing, such as misapplying payments to interest or escrow funds; and (6) on plaintiff's misrepresentation claims, defendant did not make any representations in the note, any such misrepresentations must be independent of the parties' contract and plaintiff did not rely on any false information.

<u>**Analysis**</u>

**I.      Truth In Lending Act**

Plaintiff alleges that defendant violated the federal TILA by "overcharging the interest on her loan

6

which caused the rate of interest charged to be higher than the rate disclosed in the financing contract."
Pretrial Order (Doc. #88) at 9; see id. at 4-5 (by overcharging interest and over-funding escrow account, defendant altered rate disclosed in contract, violating TILA).[6]  Defendant argues that it is entitled to summary judgment because a lender cannot violate the TILA disclosure requirements by events after the loan closes, such as misapplying payments to interest or escrow funds.

The purpose of the TILA is to give consumers meaningful disclosures of credit terms and conditions, and encourage the informed use of credit.  See 15 U.S.C. § 1601(a).  The most important mandated disclosures are those on which consumers can compare competing loans – the finance charge and annual percentage rate.  Herrera v. First N. Sav. & Loan Ass'n, 805 F.2d 896, 900 (10th Cir. 1986);

---

[6]        In her opposition brief, plaintiff also claims that CitiMortgage violated TILA with respect to her first note because the annual percentage rate ("APR") identified on the first page of the note (6.375 per cent) is different than the APR on the TILA disclosure (6.4872 per cent).  See Plaintiff's Memorandum (Doc. #99) at 23.  Plaintiff's argument is wholly without merit and suggests that plaintiff and her common law husband did not make a reasonable inquiry of the relevant law.

First, plaintiff ignores the fact that Firstar, not CitiMortgage, made the TILA disclosure on her first loan.  Plaintiff cites no authority which suggests that simply because CitiMortgage later purchased her loan, CitiMortgage is liable for Firstar's failure to disclose information before closing.  Second, plaintiff cites Regulation Z, but utterly ignores the provisions of that regulation which specify that certain charges such as points, document preparation fees and other fees which are excessive compared to their purpose (like excessive fees for notaries, appraisal, credit reports, title examinations, etc.) must be included as finance charges in the TILA disclosure of the APR.  See  12 C.F.R. § 226.4.  If any such charges apply, the APR on the TILA disclosure should always be higher than the APR stated in the note.  Third, TILA provides that "[t]he disclosure of an amount or percentage which is greater than the amount or percentage required to be disclosed . . . does not in itself constitute a violation of [TILA]."  15 U.S.C. § 1602(z).  TILA regulations specify that a disclosed APR is considered accurate "if it is not more than 1/8 of one percentage point above or below the [actual APR]."  12 C.F.R. § 226.22(a)(2); see 15 U.S.C. § 1606(c).  Here, the disclosed APR of 6.4872 per cent is less than 1/8 of one percentage point above the rate of 6.375 per cent which plaintiff claims should have been disclosed.  Finally, plaintiff did not allege this violation in the pretrial order.  Plaintiff cannot raise this new claim in her opposition brief.

see Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 569 (1980).  Courts have liberally construed the

TILA in favor of borrowers.  See Begala v. PNC Bank, Ohio, N.A., 163 F.3d 948, 950 (6th Cir. 1998),

cert. denied, 528 U.S. 868 (1999); Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 898 (3d Cir. 1990);

Jackson v. Grant, 890 F.2d 118, 120 (9th Cir. 1989); Bizier v. Globe Fin. Servs., 654 F.2d 1, 3 (1st Cir.

1981); Mirabal v. Gen. Motors Acceptance Corp., 537 F.2d 871, 878 (7th Cir. 1976), cert. denied, 439

U.S. 1039 (1978), overruled on other grounds by Brown v. Marquette Sav. & Loan Ass'n, 686 F.2d 608

(7th Cir. 1982).  The TILA and its regulations mandate the disclosure of certain information in financing

agreements and enforce that mandate by "a system of strict liability in favor of consumers who have secured

financing when the standards are not met."  Thomka v. A.Z. Chevrolet, 619 F.2d 246, 248 (3d Cir. 1980);

see Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983); In re Rodrigues, 278

B.R. 683, 687 (Bankr. D.R.I. 2002).  Even where the borrower cannot establish actual damages, lenders

may be liable for technical or minor violations of the TILA.  See Jackson, 890 F.2d at 120; Mars, 713

F.2d at 67; see also Herrera, 805 F.2d at 901 (no showing of actual damages required to recover statutory

penalty under TILA; proven violation of disclosure requirements is presumed to injure borrower by

frustrating purpose of permitting consumers to compare various available credit terms).

The TILA judges the accuracy of lender disclosures at the time the credit transaction is

consummated.  See Begala, 163 F.3d at 950; Rudisell v. Fifth Third Bank, 622 F.2d 243, 246 (6th Cir.

1980); see also 12 C.F.R. § 226.17(b) (creditor shall make disclosures before consummation of

transaction); Bartholomew v. Northampton Nat'l Bank, 584 F.2d 1288, 1296 (3d Cir. 1978) (adequacy

and accuracy of disclosures measured at time credit extended).  Post-consummation events which render

the initial disclosures inaccurate generally do not violate the TILA or give rise to additional disclosure

obligations.  The TILA provides as follows:

> Effect of subsequent occurrence.  If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.

15 U.S.C. § 1634.  The regulations clarify this provision as follows:

> (e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20.

12 C.F.R. § 226.17(e).  "The exceptions referred to concern certain residential mortgage and variable rate transactions, 12 C.F.R. § 226.19, refinancings, assumptions, and variable rate adjustments, 12 C.F.R. § 226.20, and circumstances where early disclosures are rendered inaccurate prior to the date of consummation, 12 C.F.R. § 226.17(f)."  Begala, 163 F.3d at 951

Some lenders allow borrowers to defer one or more payments.  Like prepayments, deferral of payments changes the effective interest rate paid by the borrower.  The Federal Reserve Official Staff Commentary, however, specifically precludes re-classifying a deferral of an individual payment as a refinancing subject to additional disclosures: "Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation." 12 C.F.R. Pt. 226, cmt. 1 to 226.20(a), at 465 (2004); see Jackson v. Am. Loan Co., Inc., 202 F.3d 911, 913 (7th Cir. 2000) (commentary uses deferral of "individual installments" as illustration; only cancellation of original obligation and substitution of new obligation amount to refinancing).

Two federal courts of appeal have addressed the "subsequent occurrence" provision of TILA.  See

9

Begala, 163 F.3d at 950-51; Bone v. Hibernia Bank, 493 F.2d 135, 140-41 (9th Cir. 1974).  Both courts held that payment holiday or deferral programs do not require additional TILA disclosures or render the initial TILA disclosures inaccurate.  The Ninth Circuit reasoned as follows:

> [O]nce disclosed, if the annual percentage rate is "rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures . . ." it is not a violation of the Act. 15 U.S.C. § 1634 (1970).  Otherwise, subsequent events such as late payment charges, Christmas deferrals *or prepayment of the obligation*, would each require a recomputation of the annual percentage rate.  This result would be entirely unwieldy and impractical.

Bone, 493 F.2d at 140-41 (emphasis added); see Begala, 163 F.3d at 951; Cardenas v. Classic Chevrolet, Inc., No. 00C2020, 2000 WL 1672317, at *5 (N.D. Ill. Nov. 3, 2000).  In sum, to establish a TILA disclosure violation, plaintiff must show that the pre-consummation disclosures were inadequate on their face, not as a result of subsequent events.  See Begala, 163 F.3d at 950-51 (plaintiff must assert violation of TILA's pre-consummation disclosure requirements).

Here, plaintiff's TILA claim is based solely on post-consummation events, i.e. her prepayments and how defendant applied those payments to principal and interest.  Plaintiff maintains that the disclosed interest rate (5.5 per cent on unpaid principal), along with the statement that the note did not have a prepayment penalty, were inaccurate from the beginning.  See Plaintiff's Memorandum (Doc. #99) at 23.  The Court disagrees.  TILA disclosures are designed to reflect the credit terms to which the parties are legally bound at the time of disclosure, i.e. the terms of the parties' contract, so that consumers can compare more readily the various credit terms available to them and avoid the uninformed use of credit.  See 15 U.S.C. § 1601; 12 C.F.R. § 226, Supp. I, cmt. 5(c)(1).  TILA disclosures, however, do not

10

protect consumers from a subsequent breach of contract by the creditor.[7] See Scroggins v. LTD, Inc., 251 F. Supp.2d 1277, 1281 (E.D. Va. 2003); see also Weigel v. Nationsbank of Va., No. HM-93-1411, 1994 WL 543499 (D. Md. May 13, 1994) (inaccuracies in original disclosures not TILA violations if attributable to subsequent occurrences such as consumer default or early payment) (quoting Federal Reserve Board, Compliance Examination Procedures); Burgess v. Charlottesville Sav. & Loan Ass'n, 477 F.2d 40 (4th Cir. 1973) (TILA concerned only with disclosure, not subsequent performance; breach of contract did not affect accuracy of initial disclosures).   Plaintiff does not contest the fact that the TILA disclosures accurately reflect the parties' contractual obligations.   To the extent that defendant breached the parties' contract by the method in which it applied plaintiff's payments, plaintiff's action lies in contract. Plaintiff has presented no evidence that defendant's TILA disclosures were inaccurate at or before consummation of the loan agreements.   Accordingly, the Court sustains defendant's motion for summary judgment on plaintiff's TILA claim.

---

[7]      In Travis v. Boulevard Bank N.A., 880 F. Supp. 1226 (N.D. Ill. 1995), the creditor procured unauthorized insurance and charged it to plaintiffs' account after plaintiffs defaulted on their promise to insure the collateral.  See id. at 1230.  The district court held that (1) the creditor's purchase of unauthorized insurance and assessment of those premiums to plaintiff's account constituted a new credit transaction subject to new disclosures under TILA; and (2) the subsequent occurrence defense is not available when the creditor causes the events which render the TILA disclosures inaccurate.  Id. at 1229-30.  The Sixth Circuit distinguished Travis because the bank in that case had increased the principal amount of plaintiffs' debt by charging insurance premium payments to the account.  Begala, 163 F.3d at 951 n.1. In contrast, Begala involved payment deferrals which cannot be construed as new credit transactions.  Id. Here, like Begala, plaintiff does not allege facts which would constitute a new credit transaction.  Instead, plaintiff claims that defendant misapplied her payments between principal and interest, i.e. defendant did not decrease the principal amount on her loan by the correct amount.  Because defendant had a contractual right to allocate prepayments between principal and interest, plaintiff's allegations are closer to those in Begala than those in Travis.  Although plaintiff contends that defendant did not properly allocate her prepayments under the terms of the note, her claim attacks defendant's breach of the parties' contract – not the accuracy of the TILA disclosures.

## II.      Real Estate Settlement Procedures Act

In plaintiff's response to defendant's motion for summary judgment, plaintiff states that defendant violated Section 2605 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605. The pretrial order contains no such legal theory.[8]   The pretrial order states that it "shall supersede all pleadings and control the subsequent course of this case" and "shall not be modified except by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice." Pretrial Order (Doc. #88) at 1; see Fed. R. Civ. P. 16(e); D. Kan. Rule 16.2(c); see also Hernandez v. Alexander, 671 F.2d 402, 407 (10th Cir. 1982) (pretrial order supersedes pleadings and becomes governing pattern of suit). Plaintiff has not sought to amend the pretrial order to include a RESPA claim.  The Court therefore does not construe the pretrial order to assert a RESPA claim.[9]

_____

[8]          Indeed, in an e-mail to defense counsel in October of 2005, plaintiff acknowledged that she was dismissing her RESPA claim and had removed references to RESPA from the legal theories in the pretrial order.  See Exhibit A to Defendant's Reply (Doc. #105).  In the factual contentions section of the pretrial order, plaintiff alleged that by over-funding her escrow account, defendant violated RESPA and TILA.  See Pretrial Order (Doc. #88) at 5.  In her e-mail to defense counsel, plaintiff explained that she kept that allegation in the factual contentions as support for her TILA claim and her contention that the parties had a bona fide dispute.  See Exhibit A to Defendant's Reply (Doc. #105).  Plaintiff conceded that although she originally thought that she could assert violations under Section 10 of RESPA, 12 U.S.C. § 2609, she discovered that only the Secretary of Housing and Urban Development could bring such claims.  See id.  In her complaint and amended complaint, plaintiff did not attempt to state a claim under 12 U.S.C. § 2605, which governs the timing of a mortgagor's response to inquiries by a mortgagee.

[9]          Even if plaintiff had preserved her RESPA claim, it likely lacks substantive merit. Section 2605 requires a mortgagor to respond to inquiries within 60 days after it receives a qualified written request from the borrower or her agent for information relating to the servicing of the loan unless the mortgagor acts in accordance with the borrower's request within that time period.  12 U.S.C. § 2605(e). Even if the Court assumes that defendant did not respond to plaintiff's inquiries, plaintiff has not alleged or shown actual damages which is a required element under RESPA Section 2605.  See 12 U.S.C. § 2605(f); see also Byrd v. Homecomings Fin. Network, --- F. Supp.2d ----, 2005 WL 3601707, at *7 (N.D. Ill. Dec. 29, 2005).

### III.    Remaining State Law Claims

Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332 (diversity jurisdiction) and 1367 (supplemental jurisdiction).  See Pretrial Order (Doc. #88) at 1.  Because the Court has dismissed plaintiff's only federal claim under the TILA, the Court no longer has federal question jurisdiction under 28 U.S.C. § 1331.

The pretrial order states that subject matter jurisdiction "is not disputed to the extent that Plaintiff's federal question claims survive summary judgment."  Pretrial Order (Doc. #88) at 1.  Plaintiff's federal question claim has not survived summary judgment, however, and the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.[10]  The Court therefore examines whether it has diversity jurisdiction over plaintiff's remaining state law claims.  28 U.S.C. § 1332.  Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so.  See Castaneda v. I.N.S., 23 F.3d 1576, 1580 (10th Cir. 1994).  A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking.  Scheideman v. Shawnee Co. Bd. of Co. Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3).  The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.  Basso, 495 F.2d at 909 (10th Cir. 1974).  Thus plaintiff bears the burden of showing why the case should not be

---

[10]      In its discretion, the Court may exercise supplemental jurisdiction over state law claims if they sufficiently relate to a pending claim over which the Court has original jurisdiction.  See 28 U.S.C. § 1367(a).  The Court need not exercise supplemental jurisdiction, however, and it may decline to do so if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).  Here, the Court has dismissed plaintiff's only federal claim.  To the extent that the Court lacks diversity jurisdiction, however, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

13

dismissed. Jensen v. Johnson Co. Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan.1993).

The parties have stipulated that plaintiff is a citizen of Kansas and that defendant is incorporated in Delaware. See id. at 2. The parties' stipulations and factual contentions do not address defendant's principal place of business. Bui v. IBP, Inc., 34 Fed. Appx. 653, 655 (10th Cir. Apr. 22, 2002) (court does not have burden to insure that adequate jurisdictional facts are pleaded and included in final pretrial order). Plaintiff has the burden to show that diversity jurisdiction is proper. Accordingly, on or before **February 16, 2006 at 1:00 p.m.**, plaintiff shall show cause in writing why the Court should not dismiss her remaining state law claims for lack of diversity jurisdiction based on her failure to allege diversity of citizenship in the pretrial order. On or before **February 17, 2006 at 1:00 p.m.**, defendant may file a response.

In addition to plaintiff's failure to allege that the citizenship of the parties is diverse, plaintiff's claims do not appear to exceed $75,000. To determine whether plaintiff has satisfied the jurisdictional amount, the Court looks to the face of her complaint. Ordinarily, the amount claimed in the pleadings is controlling if plaintiff apparently makes the claim in good faith. See Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998). The Tenth Circuit, however, has cautioned that if it is apparent to a legal certainty, from the face of the pleadings,

> that plaintiff cannot recover the amount claimed, or if from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that [her] claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

F & S Constr. Co. v. Jensen, 337 F.2d 160, 162 (10th Cir. 1964) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). While plaintiff is not necessarily required to specify an exact

14

amount of damages, she must allege enough facts to convince the Court that recoverable damages will bear a reasonable relation to the minimum jurisdictional requirement. See Gibson v. Jeffers, 478 F.2d 216, 221 (10th Cir. 1973).

If the legal impossibility of recovering $75,000 is so certain that it virtually negates plaintiff's good faith in asserting the claim, the Court must dismiss the action for lack of jurisdiction. See Fitzgerald v. City of Ottawa, 975 F. Supp. 1402, 1405-06 (D. Kan. 1997); Wiggins v. N. Am. Equit. Life Assur. Co., 644 F.2d 1014, 1017 (4th Cir. 1981) (citation omitted). Normally, in determining whether the jurisdictional requirement is met, the Court considers evidence of conditions as they existed on the date plaintiff filed the complaint. See Fitzgerald, 975 F. Supp. at 1406 (citing Sellers v. O'Connell, 701 F.2d 575, 579 (6th Cir. 1983)).

From a review of plaintiff's remaining state law claims and defendant's motion for summary judgment, it appears that plaintiff's claim of accord and satisfaction was not made in good faith. Plaintiff alleges that because defendant cashed her $200 check, which was marked as "full accord and satisfaction," she does not owe any further money on the note. See Pretrial Order (Doc. #88) at 7. In Kansas, K.S.A. § 84-3-311 governs accord and satisfaction by use of a negotiable instrument. It provides as follows:

> (a)     If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subsections apply.

> (b)     Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

> (c)     Subject to subsection (d), a claim is not discharged under subsection (b) if either

15

of the following applies:

> (1)     The claimant, if an organization, proves that (A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office or place, and (B) the instrument or accompanying communication was not received by that designated person, office or place.

> (2)     The claimant, whether or not an organization, proves that within 90 days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted. This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (1)(A).

> (d)     A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Defendant argues that it is entitled to summary judgment on plaintiff's accord and satisfaction claim because (1) plaintiff's tender of a $200 check for her mortgage was not in good faith and (2) plaintiff cannot show new consideration for the accord and satisfaction or that the entire amount of her mortgage was subject to a bona fide dispute.  Plaintiff argues that she is entitled to summary judgment on this issue because as a matter of law, she has satisfied all of the elements of an accord and satisfaction.

A.     Good Faith

The Kansas Uniform Commercial Code defines "good faith" as both honesty in fact and the observance of reasonable commercial standards of fair dealing.  K.S.A. § 84-3-103(a)(4); see Official UCC Comment 4 to K.S.A. § 84-3-311 (refers to definition in UCC § 3-103(a)(4)).  Official UCC Comment 4 to K.S.A. § 84-3-311 states as follows:

> The meaning of "fair dealing" will depend upon the facts in the particular case.  For example, suppose an insurer tenders a check in settlement of a claim for personal injury in

16

> an accident clearly covered by the insurance policy.  The claimant is necessitous and the amount of the check is very small in relationship to the extent of the injury and the amount recoverable under the policy.  If the trier of fact determines that the insurer was taking unfair advantage of the claimant, an accord and satisfaction would not result from payment of the check because of the absence of good faith by the insurer in making the tender.

The Kansas Comment to K.S.A. § 84-3-311 notes that the section is designed to prevent tricking a creditor into an accord and satisfaction.

Plaintiff's offer of $200 was less than one quarter of one per cent of the amount which she conceded that she owed on her mortgage (approximately $118,000).  Plaintiff states that $200 was a good faith offer because it was to resolve more than the mortgage as "Plaintiff was forced into court to recover the disputed amounts that could not be voluntarily resolved with the Defendant." Plaintiff's Memorandum (Doc. #99) at 7.

Plaintiff does not explain how defendant *forced* her into court.  In any event, as plaintiff is certainly aware, a party ordinarily does not resolve a lawsuit with a creditor by sending an accord and satisfaction check to the creditor's customer service address without advising the creditor's legal counsel of the arrangement.  Such behavior is particularly suspect where plaintiff is an attorney who primarily represents financial institutions in matters involving loans that are in default.  In the pretrial order, plaintiff states that defendant did not file an answer to her complaint by the deadline, and that "[i]nstead of moving for a default judgment Plaintiff sent an accord and satisfaction letter along with a check marked 'Paid In Full, Accord and Satisfaction.'" Pretrial Order (Doc. #88) at 5.  To the extent plaintiff truly believed that her $200 check was a good faith offer to satisfy her mortgage and resolve the claims in the pending lawsuit, she does not explain (1) why she followed this course of action given the fact that her original complaint did not seek to have her mortgage deemed satisfied; (2) why she sent some $20,000 to defendant in the 20 days

17

between when she filed the complaint and when defendant's answer was due; (3) why she later agreed to

an extension of time for defendant to file an answer; (4) why she did not explain to defense counsel (who

entered his appearance on October 14, 2004) that because defendant had cashed her check for $200, the

claims in the lawsuit had been resolved or would be resolved if defendant did not return the check within

90 days under K.S.A. § 84-3-311(c); or (5) why she continued to make regular monthly payments to

defendant on October 6, October 25 and December 31, 2004.[11]  Plaintiff insists that she was not trying

to trick defendant, but the meager sum she offered – combined with the fact that she did not inform defense

counsel or the Court of her offer until after the 90-day return period had expired – compels a finding that

she acted in bad faith.[12]  In sum, viewing the evidence in a light most favorable to plaintiff, no reasonable

jury could find that she acted in good faith by tendering a $200 check as full satisfaction for her mortgage.

To the extent the Court has jurisdiction over this claim, defendant would be entitled to summary judgment.

      B.   <u>New Consideration Or Bona Fide Dispute</u>

     Even if plaintiff could establish that she tendered the $200 check in good faith, she has not satisfied

the second element of an accord and satisfaction under the Kansas UCC.  Absent additional consideration

(<u>i.e.</u> a new agreement), plaintiff must establish that the amount of defendant's claim was unliquidated or

---

[11]     As of December 14, 2004, plaintiff intended to request class certification and was investigating some 320 potential plaintiffs to join the lawsuit.  <u>See</u> <u>Plaintiff's Response To Defendant's Motion To Strike, Or In The Alternative For More Definite Statement</u> (Doc. #7) ¶ 4.  At that time, plaintiff did not inform the Court or defense counsel that her claims had been settled because defendant had accepted the $200 check.  In fact, the record reveals that plaintiff wanted to keep the check a secret until the 90-day return period had expired.

[12]     Likewise, when viewed in context, plaintiff's payments on her mortgage shortly before and after she filed this lawsuit (though legal and permissible under the note), can only be described as bizarre and an attempt to trick defendant.

subject to a bona fide dispute when she tendered the accord and satisfaction check. See K.S.A. § 84-3-311(a)(2). Plaintiff first argues that she offered new consideration, i.e. the intent to dismiss her lawsuit which would save defendant legal expenses and potential damage to its business reputation. See Plaintiff's Memorandum (Doc. #99) at 2, 8. Plaintiff ignores the fact that she did not inform defendant of her intent until after the 90-day return period had expired. In addition, plaintiff never acted on her purported intent. Plaintiff's unexpressed intent does not supply the new consideration which Kansas requires for a valid accord and satisfaction. See Sigler v. Sigler, 98 Kan. 524, 527, 158 P. 864 (1916) (consideration must be legally sufficient to support ordinary contract).

Next, plaintiff argues that she was not required to provide additional consideration because the claim was subject to a bona fide dispute. The extent of the parties' bona fide dispute, however, was limited to the difference between the principal amount which defendant said plaintiff owed (roughly $120,000) and the principal amount which plaintiff said she owed (roughly $118,000). Plaintiff did not seek an accord and satisfaction of the parties' bona fide dispute, but an accord and satisfaction of that dispute *plus* a forfeiture of plaintiff's undisputed obligation to pay the principal amount of roughly $118,000. Plaintiff has presented no evidence which suggests that the $118,000 principal balance was subject to a bona fide dispute. For this alternative reason, to the extent the Court has jurisdiction over this claim, defendant would be entitled to summary judgment.[13]

---

[13]     Defendant also argues that plaintiff has not shown that the processing clerk to whom she sent the $200 check was authorized to accept an accord and satisfaction check under K.S.A.§ 84-3-311(d). Because defendant has not asserted that subsection (c) of K.S.A. § 84-3-311(c) applies, the Court need not resolve whether plaintiff has satisfied the requirements of subsection (d). See In re Al Muehlberger Concrete Const., Inc., 319 B.R. 663, 666 (D. Kan. Bankr. 2005) (if subsection (c)(1) and
(continued...)

Plaintiff's remaining state law claims are for breach of contract, breach of fiduciary duty, conversion and misrepresentation. Plaintiff does not specify her actual damages on these claims, but she alleges that her total actual damage on all claims is approximately $25,000.[14] See Pretrial Order (Doc. #88) at 23. In addition, plaintiff seeks punitive damages in an amount equal to her actual damages. See id. at 23-24. Based on plaintiff's allegations in the pretrial order, she seeks some $50,000 on her remaining state law claims.[15] The alleged amount in controversy on the remaining claims is well below the jurisdictional minimum of $75,000 set forth in 28 U.S.C. § 1332.[16]

Although the Court's discussion above on plaintiff's accord and satisfaction claim is in the context

---

[13](...continued)
(c)(2) do not apply, subsection (d) also does not apply).

[14]     Plaintiff claims that this amount includes (1) the difference between the amount of the refinanced loan and the amount that she actually owed on her first loan; and (2) the interest amount overcharged on her refinanced loan. As to the second element of plaintiff's damages, plaintiff has included the amount which she anticipates that she will overpay over the next approximately 15 years. Plaintiff apparently has not discounted her anticipated future loss to present value.

[15]     Plaintiff also seeks attorneys fees on her breach of contract claim "under the doctrine of mutuality of remedies in that the default provision of the contract allows for attorney fees to be paid to the creditor if the buyer breaches the contract." Pretrial Order (Doc. #88) at 24. Some states have enacted similar statutory rules, see, e.g., Cal. Civil Code § 1717; Fla. Stat. § 57.105(2); Wash. Rev. Code § 4.84.330, but plaintiff does not argue that Kansas has enacted such a statute or that Kansas courts would create such a rule under the common law. In addition, plaintiff has acted *pro se* for a significant portion of this case, and attorneys acting *pro se* are generally not entitled to recover fees. See Kay v. Ehrler, 499 U.S. 432 (1991) (*pro se* plaintiff who is attorney cannot recover attorney fees under fee-shifting provision of Civil Rights Act).

[16]     The Court has used the pretrial order as a guide in estimating the amount in controversy on plaintiff's remaining state law claims. As explained above, however, to determine whether plaintiff has satisfied the jurisdictional amount for diversity jurisdiction, the Court looks to the face of her complaint. In their responses to the order to show cause, the parties should address whether the face of plaintiff's complaint establishes that the Court has diversity jurisdiction.

of a motion for summary judgment and the allegations in the pretrial order, plaintiff's claim is so insubstantial as to suggest that she did not file it in good faith. Accordingly, on or before **February 16, 2006 at 1:00 p.m.**, plaintiff shall show cause in writing why the Court should not dismiss her remaining state law claims for lack of diversity jurisdiction based on failure to allege in good faith damages in excess of $75,000. On or before **February 17, 2006 at 1:00 p.m.**, defendant may file a response.

      **IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #82) filed October 12, 2005 be and hereby is **SUSTAINED in part**. The Court sustains defendant's motion as to plaintiff's claim under the TILA. On or before **February 16, 2006 at 1:00 p.m.**, plaintiff shall show cause in writing why the Court should not dismiss her remaining state law claims for lack of diversity jurisdiction based on the failure to allege (1) diversity of citizenship in the pretrial order and (2) in good faith in her complaint, an amount of damages in excess of $75,000. On or before **February 17, 2006 at 1:00 p.m.**, defendant may file a response.

      Dated this 14th day of February, 2006 at Kansas City, Kansas.

                                    s/ Kathryn H. Vratil
                                      KATHRYN H. VRATIL
                                      United States District Court